# Exhibit 20

**This exhibit is an excerpt.**

3/44

Jim Forte
96 Irving St
02151
add to A

Melissa Deniston
1) Webster St   good
it's
02149

Pan Hirtle   - COA
3d Searrentios
02148

Donald Desroches   - on dd rot new
X4 Plainfield Ave
02148

Jonathan Fisher   Wicklow
X5 Wicklow Gr   gr   on dd rot   new
02155   ☆

Rita Fraser
96 Thorndy St   good
02125

Roberto Rodriguez   - good
97 N Leyden St
#1   02128

Selena Selena
Celenesa
Rankin
ord to A
X  LL  260780
Mark   02126

Add to A   if not
done
Mack

Wilbur Johnson
N7 Whitney St
good   #2
Saugus   01906

Peter Trainito
Trainule
good   7902   #1
Powell   Pauliet Rd
Pauliet Belmont   01887

Steve
Rabizollo
X4 Englewood Av
02149

good

Anthony M Hunter
0 Quint Ave    *old
Allston, Ma 02134    new

Holly Spano.
37 Bayberry RD    Old not
Abington, MA. 02357    new

FARROUJ, KHALID    good
110 Boylston street
MALDEN MA 02148

FORREST, RICHARD    good
20 Russell RD
S. Weymouth MA 02190

Lisa Huestess    N old
114 Converse Ave    new    ®
Malden MA 02148

Bertha White
121 Ashmont St Apt 1
Dorchester, MA 02124-3
√ not correct

add to A    on old
Christophe Flynn    return new
46 Bovain St
02132

A to R
Richard Hartwell
Bx BOY 994
marshfield 02050

Denis Gaspar
12 Pond View Rd
Billeri 01821

Brian Daley    Charge
61 Eaton Rd    East Pa
Billeri 01821

Felix Bourkitis
215 Cottereos St
02127

Alan K. Chan
38 Readville
Neol 02494

Kevin Doherty — Charge
27 Springhill Rd    02105

F. Gary 01701-7769

Danny Johnson ⊛
76 Custer St
Nihol D 2136

Tina Doherty
79 Mountain #2
Revere

Tracy DiStasio
12 Parker Dr
N Reading 01864

John Hourihan
9 Church St
Medford 02055

Abdelhabid Daoud
663 Beach St #3
02151
send to
charge
address

Wayne Tamra

add to
Amy McFlynn
18 Wohfield Av
Saugus 1906

Matthew Fobel
150 Ocean Av
#109
02152

On old not new
Christopher P Flynn
46 Borain St
0213

MARBEL CARTAGENA
17 HIAWATHA RD   APT 3
MATTAPAN, MA      02126      add to A

Did not rec'
Ballot

---

FARd Driss:   only not new      MARK Cowell
27 Bailey ST  #3              24 ~~Paul~~ Jacobsen DR
Dorchester, MA      02124      Norwood  02062
                              check sent chung modal
                              charge address

---

Phillip A. mossari   new guy — Add if not done
254 market st #2
Brockton, Ma  02301

7 8V
91°
6 3 33

---

Joseph M. RYAN
854 EAST. BROADWAY
So. BOSTON, 02127      good A

---

DAN DURKAN
22 RAVEN ST          good
DOR. MA. 02125

Tracey oakes   add to A
151 Sea ST
#501  02169      ⊗

# Missing Ballots

~~Josuha~~

Joshua Geddis
20 Landing Rd    good
MARSHFIELD, MA


SUZANNE Champigny
good    31 beach St Salen 01970


Adt D Leila P De Souza
186 Belmont St #1
02148                        Navares


Zhifan Dong
32 Lincoln St    good
02148

Da    Preswell good
4 Betsy williams Ct                    on old not new
Johnston RI 0405
02919                        *    Lin Riddef
                                        112 Middle St
                                        E Wey # 12
Clarence Craver    good        Rd 189
60 Cedar Lan
Halifax 02338                    Mike Fitzgerald
                                        02188

Welliam Stiles    good
90 Reed St
Col 02370

Needs A Ballott

add to A

William Zampitella          Needs 8-9 mos

73 Cushing Road

Malden, M. 02148

on old not
new
add to A

Edward Young
53 Grove Street
Scituate, Mt. 02066

(X) Rene

Marie Cunningham
53 Stanton Street
Rockland, MA. 02370

Stuart
Newbart
130 Constitution
Ave

John Reilly
26 First Parish Road
Scituate, MA. 02066

Rever 02/3

Lynda Harder
542 Washington
Oxide 0189.

Ken Fitzpatrick
162 Warren St
02453 -

Need to delete

Peter Pearson
Same    Charge of A
delete

Lucas Tran
230 High St
02362

add to
A

Christophe Flynn
46 Bryan St
02132

Mickey

# Exhibit
# 21

JUN 3 0 2004

**REGULAR ARBITRATION PANEL**

---------------------------------------------------------------

| | |
|---|---|
| IN THE MATTER OF ARBITRATION ) | |
| ) | |
| between ) | Grievant: A. Sortino |
| ) | |
| UNITED STATES POSTAL SERVICE ) | CASE NOS. |
| ) | USPS: B01N-4B-D |
| and ) | 03207650 |
| ) | |
| NATIONAL ASSOCIATION OF LETTER ) | NALC: 03338D8 |
| CARRIERS, AFL-CIO ) | |

---------------------------------------------------------------

Before: Robert T. Simmelkjaer, Esq.


## APPEARANCES

### FOR THE USPS

James H. Ryan, Labor Relations Specialist


### FOR THE NALC

Ed Ahlsted, Advocate


Place of Hearing: Boston, MA
Date of Hearing:   December 5, 2003 and March 22, 2004


## AWARD

The Notice of Removal, dated August 13, 2003, issued to the Grievant, Angelo Sortino, was for just cause.

June 28, 2004

_____
Robert T. Simmelkjaer

## BACKGROUND

Pursuant to the collective bargaining agreement between the United States Postal Service (hereinafter "the Service") and the National Association of Letter Carriers, AFL-CIO (hereinafter "the Union"), the undersigned was designated to hear and determine the following

ISSUE:    Was the Notice of Removal, dated August 13, 2003, issued to the Grievant, Angelo Sortino, for just cause?
If not, what shall be the remedy?

At the hearing, the parties were given ample opportunity to present their respective cases, including testimony, documentary evidence and argument. The record consists of two (2) Joint Exhibits, one (1) Union Exhibit and six (6) Service Exhibits. In addition, the parties submitted post-hearing briefs dated April 29, 2004.

## RELEVANT CONTRACT PROVISION

### ARTICLE 16

### DISCIPLINE PROCEDURE

**Section 1.  Principles**

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for

in this Agreement, which could result in reinstatement and restitution, including back pay.


**Section 5. Suspensions of More than 14 Days or Discharge**

In the case of suspensions of more than fourteen (14) days, or of discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the cases has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure. A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his/her discharge to the Merit Systems Protection Board (MSPB) rather than through the grievance-arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement or through exhaustion of his/her MSPB appeal…


## EMPLOYEE AND LABOR RELATIONS MANUAL

**Section 666.81**

"Employees are required to be regular in attendance."

**Section 513.362**

"For absences in excess of 3 days, employees are required to submit documentation or other acceptable evidence of incapacity to work."

**Section 511.43**

"Employees are expected to maintain their assigned schedule and make every effort to avoid unscheduled absences. In addition, employees must provide acceptable medical evidence for absences when required."


**STIPULATION:**   The Grievant was incarcerated from February 3, 2003 to February 14, 2004.

## SERVICE POSITION

The Service maintains that, despite the commendable attendance of the Grievant at the Violence Intervention Program ("VIP"), this "does not negate the fact that the Grievant was not regular in attendance or AWOL for all the dates cited on the Notice of Removal ("NOR"). In charging the Grievant with failure to be regular in attendance ("FTRA"), the NOR cites the following unscheduled absences:

| Date | Hours | Leave |
|------|-------|-------|
| 12/4/02 – 1/31/03 | 320 | AWOL |
| 2/4/03 – 8/5/03 | 1024 | AOWL |

Notwithstanding a letter, dated July 22, 2003, stating that "Angelo Sortino is a graduate of the Violence Intervention/Prevention Program at the Middlesex House of Correction at Billercia MA," having participated for three months, the Service contends that this program involvement "does not excuse the Grievant from the  charge of Failure to be Regular in Attendance." According to the Service, the Grievant never called or sent any communication to the Service indicating that he would not be at work, never informed the installation head of his current address as required by ELM Section 666.7, and never gave the Service his mailing address at the Middlesex House of Correction.

In addition, the Service maintains that the Grievant was issued progressive discipline, including a Letter of Warning, a 7-day suspension and a 14-day suspension for attendance. Moreover, the Service maintains

that there is "no basis to afford the Grievant a last chance agreement" and there is no contractual requirement to provide such an alternative to removal.

Ms. Lori M. Bullen ("Bullen"), Manager at Cambridge, MA, testified that she issued the NOR. She acknowledged that the NOR and the accompanying 3971s encompass the period of the Grievant's incarceration, namely 2/4/03 to 8/5/03. She testified that the NOR was first delivered to the correctional facility on 8/13/03 and subsequently by postal inspectors on 8/14/03.

Ms. Bullen further testified that a PDI was conducted on March 26, 2003 by Supervisor White. She issued the NOR after discussing the PDI and following a review of Mr. Sortino's past elements. She obtained higher level concurrence from PM Riordan.

On cross-examination, she acknowledged having no role either in the Grievant's discipline for the period 12/4/02 through 1/31/03 or the past elements which predated the NOR.

She recalled that a family member of the Grievant had informed management that, while incarcerated, the Grievant did not have telephone privileges. Although aware of the Grievant's request for a leave of absence, she agreed with the denial because Sortino was incarcerated. Ms. Bullen acknowledged that, although Supervisor White was the supervisor of record for the 3971s covering the Grievant's absence during

his period of incarceration, she filled out and signed the 3971s for this
period (Jt. Ex. #2 @ 24-27).

In determining that the Grievant was not present from 12/4/02 to
1/31/03, Bullen testified that she discussed the situation with other
supervisors and was aware of the PDI. During the PDI conducted via
telephone, she heard from White that the Grievant would be "absent for a
long time," which included the period of incarceration and anger
management rehabilitation. The Grievant's request for a leave of absence
("LOA") was denied before and during the PDI by PM Reardon (S. Ex. #3).

Ms. Bullen testified that she obtained higher level concurrence from
PM Riordan, either in person or on the phone, without giving him access to
the actual NOR document.

On redirect examination, Bullen testified that as the highest ranking
manager at a Cambridge facility, she was authorized to fill out the 3971s.
While she worked at the East Street Parcel Post Annex and PM Reardon at
Central Square, both in Cambridge, MA, she oversaw the work of the
supervisors.

She testified that the Grievant did not submit medical documentation
for his 12/4/02 through 1/31/03 absences; therefore, she charged him with
AWOL for these days. Since Cambridge has a RMD System, the Grievant
could have utilized it to inform management of his absence. She further
testified that, even if he had called, he still would have been considered
AWOL. Ms. Bullen reiterated that no postal rule or regulation prevents her

from filling out 3971s for periods she was not present at the facility.  For the period, December 31, 2002 to February 2003, she did not receive any 3971s from the Grievant.  Her knowledge of what happened during this period was gleaned from Mr. White.

Referring to a letter dated August 5, 2003 and entitled:  "Request for a Letter of Removal," Bullen testified that she left the letter in PM Reardon's office, which he later signed with his concurrence (S. Ex. #4).

Mr. Thomas Reardon, Postmaster in Cambridge, MA from February to August 2003, recalled that Manager Bullen approached him for higher level concurrence.  He reviewed the package of materials she brought over.  He recalled discussing a LOA for 2/13/03 to 2/13/04 with NALC Steward Robert Tremarche, and denying the requests (S. Exs. #2, #3).  In his letter of denial, he stated "your request for LWOP is denied as your services are required.  I have nevertheless given consideration to your needs, the needs of the Service, and the cost to the Service per ELM Section 514.22 and found that granting you such leave is not in the interests of the Postal Service" (S. Ex. #3).

Since he was a Level 22 Acting PM and Installation Head at the time and Ms. Bullen was a Level 20, PM Reardon testified that he had the authority to approve or deny a LOA.

On cross-examination, he did not recall that Bullen had filled out several 3971s on 3/26/03 for the prior year.

8

With respect to prior cases, he testified that D. Ryan, a Letter Carrier, had been absent for 3 years during which time he was a "homeless person without an address." He advised Bullen to send Lepardo, who is currently AWOL, a Letter of Availability. In the case of Ellen Stark, an employee absent for possibly 2 years, Reardon testified that her discipline had reached a 14-day suspension.

He explained that the employee, Christine Sullivan, worked outside of his jurisdiction on E Street, as he managed Central Square. She is currently AWOL and has been sent a Letter of Availability. The employee, Byers, was absent due to an on-the-job injury, as well as "involved in a drug bust." Employee Tilton was arrested but not incarcerated in a drug related matter.

Mr. Reardon further testified that there had been a "big turnover" in managers, with three managers before Bullen. As a result, various matters "fell through the cracks."

He acknowledged that the Grievant was absent for medical reasons for the first part of his NOR and therefore was not disciplined. After considering the Grievant's situation vis-à-vis the other employees who were absent long-term, he nevertheless decided to concur in his removal.

On redirect examination, he attributed the failure to timely fill out 3971s due to manager turnover (i.e., 12/4/02 to 3/26/03).

Reviewing the situations of the aforementioned employees, Reardon testified that none had sought a LOA and some had been disciplined for

FTRA.  According to Reardon, Sortino was disciplined for FTRA – not for being in jail.  He testified that he has never granted a LOA to an incarcerated employee.

With respect to C. Sullivan, a PTF Carrier, he testified that she had resigned and given her letter of resignation to Supervisor O'Brien, however, the letter could not be located.  Subsequently, she was classified as AWOL and her discipline has begun.  Mr. Lepardo has been AWOL since April 2003 and sent Letters of Availability.  His claim for stress related injury on the job has been denied.


## UNION POSITION

The Union has argued that the Service has "failed to consider the evidence that exists such as the Grievant's prior service and the treatment taken by the Grievant to rehabilitate himself."  The Union maintains that just cause for removal was not established for several reasons.  It contends that the Grievant "was charged AWOL for the dates of 12/4/02 through 1/31/03 when the person in charge of Angelo, Supervisor White was only conducting a PDI for the period of February 4 to date which was March 17, 2003."

The  Union further notes that Manager Bullen never conducted the PDI but issued the NOR and relied on PS 3971s she filled out after the PDI was conducted.  The Union maintains that the Grievant provided medical

evidence for the period August 2002 through January 31, 2003, which was not refuted by management (U. Ex. #1).

In addition, the Union argues that PM Reardon, who denied the Grievant's request for a LOA while he was in jail, served as the management official that denied the grievance at Step "B" of the grievance procedure, and also was the concurring official on the NOR.

Finally, the Union presents a disparate treatment claim that four other carriers have been absent from work or AWOL for a longer period than the Grievant and have not been disciplined.

Mr. Angelo Sortino, Grievant, testified that he had been employed 17 years with the Service prior to his NOR.  He had one prior discipline.

Mr. Sortino testified that he was absent from 12/4/02 to 1/31/03 due to mental problems.  As he put it, "I became paranoid.  I lost my mind."  He recalled using FMLA "numerous times."

With respect to his absence from 12/4/02 to 1/31/03, the Grievant testified that he called management in late August 2003 to inform them that he would be "out indefinitely and would provide medical documentation when he returned.  I said this is the last time."  On 2/1/03, he recalled giving a note to Supervisor Tobin.

On 2/3/03, he was arrested on the job and taken to the Billercia Correctional Facility.  He received a letter from Supervisor White, however, in March 2003, he could not contact management because the Service did not accept collect calls.  In response to the Letter of Availability, he

testified that he advised management to come to his mother's house where he could make telephone calls.

The Grievant testified that he informed Supervisor White that he would like to return to work when "I get out." He had a telephone conversation with Mr. White but didn't know if it was a PDI.

On cross-examination, he referred to the March 17, 2003 Letter of Availability and noted that "it didn't say I would be fired" (S. Ex. #6). "I told White I would return to work in 18 months." He responded to the LOAV within 2 days of 3/24/03. He noted that the LOAV addressed his period of incarceration and not the 12/4/02 to 1/31/03 period.

He referred to his letter from the Marino Center, dated January 23, 2003, which states that "Sortino has been unable to work since last August for depression, which was in part brought on by life stress" (U. Ex. #1). He testified that he was never hospitalized for a nervous condition, but did attend Alcohol Anonymous meetings. "I never went through any treatment programs." He attended the USPS/EAP and met with Ms. Speck possibly once between August and December 2002.

The Grievant was familiar with the RMD attendance control system. He had no recollection of his past elements.

Mr. Sortino testified that substance abuse had "weakened his mind" and contributed to his violation of a restraining order to avoid a certain female and subsequent incarceration. Although the judge initially gave him probation, "I cut off the bracelet."

His completion of the 90-day program, while incarcerated, on 4/24/03, has enabled him to "get red flags when problems arise." He still attends the STEP Program at Lady Rebecca to address his low self esteem.

Mr. Robert Tremarche, Shop Steward, testified that he handled the Step A Informal with Ms. Bullen. He also presented her with Sortino's request for a LOA, but "she wasn't responsive. I gave her the enrollment documents for his rehabilitation for substance abuse." PM Reardon eventually denied the LOA.

He then reviewed the cases of employees who had been absent for an extended period as follows:

| | |
|---|---|
| 1) Tony Lepardo - | Absent for almost 3 years. He never assumed his bid. I just received a LOW for him. Lepardo has had a series of heart attacks. |
| 2) Christine Sullivan - | PTF. Just out – no information. Assigned to E-Street. |
| 3) Ellen Stark - | Regular Carrier – Owns position in Central Square. Went out on a stress claim. At E-Street. |
| 4) Jeffrey Byers - | Caught smoking marijuana on the clock. I negotiated a Last Chance Agreement plus a 30-day suspension with PM Reardon. |
| 5) William Tilton - | No knowledge. |

According to Tremarche, management's response to absences varies at Cambridge with some employees disciplined and others not

disciplined.  He testified that the Grievant was disciplined because he used to be Chief Shop Steward.

Since the Grievant did not receive any 3971s through 3/26/03, Tremarche maintained that he would not know that he was AWOL.  There has been no issue of Grievant's fellow employees unwilling to work with him.

On cross-examination, he acknowledged that the Union did not argue Union animus or claim that the Grievant did not receive his past elements at Informal Step A.  He acknowledged that none of the employees whose cases he reviewed had sought a LOA or were incarcerated.  He did not contact the Grievant regarding his 14-day suspension – only his NOR.  He was not present at the PDI but was informed by White.

Finally, on redirect examination, he testified that management should have known it couldn't contact the Grievant while he was incarcerated "because I hand delivered a letter from Sortino's attorney."

Mr. Robert Libertore, Chief Shop Steward, participated in the Step A Informal with PM Reardon.  At the time, he had no PS 3971s or 3972s.  He also reviewed the employees whose cases he argued were treated more fairly than the Grievant.

On cross-examination, he acknowledged that at the time he participated in the Joint Formal Step A on 9/4/03, the Informal Step A had occurred, involving Tremarche and Reardon.  The Union appealed the action to PM Reardon because he was the next highest manager outside of

E-Street. He further testified that at Informal Step A, the Union usually meets with the supervisor of record, but at this step the grievance was appealed to Bullen because she issued the NOR.

While he acknowledged that it was his oversight not to request the 3971s, 3972s, he denied that the Union tried to keep them out of the record.


## DISCUSSION

Considering the evidence in its entirety, the Arbitrator is persuaded that the Grievant's Notice of Removal was for just cause. The Grievant was removed because he failed to be regular in attendance, a requirement clearly set forth in ELM, Section 666.81. Although the Grievant's incarceration was a contributing factor to his FTRA, it was not the controlling factor since employees who have been incarcerated for a shorter duration have been reinstated.

The Arbitrator first finds that the discipline imposed was progressive and corrective rather than punitive. Prior to his incarceration, the Grievant was issued a L.O.W. on May 15, 2002, a 7-day suspension on October 15, 2002 and December 3, 2002. The evidence indicates that the Grievant received the prior disciplinary elements and, according to the Shop Steward, the Union did not contact him regarding the 14-day suspension -- only the NOR.

The Union has made a series of procedural arguments, which it maintains should mitigate the penalty of removal, however, the Arbitrator

does not consider that any of these procedural irregularities, either singularly or in the aggregate, rise to the level of harmful error; that is, they are not outcome determinative in the instant case.

First, the Union argues that it was improper for PM Reardon to deny the Grievant's request for a Leave of Absence, served as the Management official at Step B and also become the concurring official on the NOR. While the Arbitrator agrees with the Union that it would have been preferable if a management official not directly involved in the processing of the case or having issued the denials of the LOA requests had independently reviewed the NOR as concurring official, there is no contractual prohibition against functioning in multiple roles. Absent some evidence of bias on PM Reardon's part, the Arbitrator discerns no limitation in Article 16.8 upon serving in multiple roles – only that the discipline be reviewed by the installation head. PM Reardon was the installation head and a Level 22 at the time which gave him the authority to approve Manager Bullen's NOR.

The Union has also faulted the fact that Ms. Bullen, who issued the NOR, did not conduct the PDI, but rather relied on a PDI conducted by Supervisor White via telephone from the correctional facility where the Grievant was incarcerated. Here again, the Union could cite no contractual provision which would preclude one manager from relying on a PDI conducted by another, particularly under the unusual circumstances of an employee's incarceration and limited communication opportunities. Ms.

Bullen testified that she discussed the PDI after it was conducted by Supervisor White on 3/26/02 and before she issued the NOR.  In effect, the Grievant had an opportunity to give his position which he acknowledged occurred in a telephone conversation with White.

In this connection, the Union argues that the PDI only addressed the period of February 4th through March 17, 2003 whereas the Grievant was charged with AWOL for the additional dates of 12/4/02 through 1/31/03.  Since Supervisor White did not testify, the Grievant had no specific recollection of the PDI and there is no documentary record of the PDI, the Arbitrator cannot evaluate this claim.  Assuming arguendo that the PDI was limited to the Grievant's period of incarceration would not alter the disciplinary outcome since the Grievant's AWOL would still encompass the seven months he was absent.  Also, Ms. Bullen testified that Mr. White had informed her, when she became manager on 2/3/03, that the Grievant had not called in during this earlier period of absence.  Even though the Arbitrator can credit the Grievant's medical evidence for this period, his FTRA is not negated (U. Ex. #1).

The Union has also challenged Ms. Bullen's decision to fill out several PS 3971s for the period 12/4/02 through 3/21/03 when she was not the supervisor of record.  While this practice was irregular, it was offset by the fact that the Grievant did not submit PS 3971s for his extensive absences, no contractual provision prohibits one supervisor from completing 3971s for another, and the indication of AWOL on these forms

was accurate since the Grievant had not been granted a LOA.  Each PS 3971 states "employee unable to sign, no call, no evidence," which accurately reflected the Grievant's incarcerated status.

The Union's major claim is one of disparate treatment, however, each of the cases cited by the Union is distinguishable from the instant case. Mr. Lepardo suffered a heart attack on 4/4/03 and had been out on a stress claim since 6/4/01.  Even so, he was issued a L.O.W. for the period 6/7/03 to 3/5/04.

Ms. Bullen testified that Ms. Christine Sullivan had given her resignation to Supervisor O'Brien who, in turn, gave it to Supervisor White. However, the resignation was misplaced and, subsequently, Ms. Sullivan could not be reached.  Recently, disciplinary action has been initiated in this case.

Ms. Ellen Stark, who does not work for Ms. Bullen, has been issued a 7-day and 14-day suspension for attendance.  Mr. Jeffrey Byers sustained an on-the-job injury which is not attendance related.  Mr. Tilden, who does not work for Ms. Bullen, was arrested, but not incarcerated for a drug offense.

In the aggregate, none of the foregoing cases is comparable to the Grievant's long-term incarceration.  The Union could cite no case where the Service granted an employee who was incarcerated a leave of absence or failed to commence disciplinary action when they failed to be regular in attendance.

The evidence indicates that Mr. Sortino was absent during the periods cited in the NOR. He did not advise the Service of his situation, inform management when he expected to return to work, or advise management of his current address. While the Arbitrator is mindful of the extenuating circumstances presented by his "depression" and subsequent incarceration, it would not be reasonable to expect the Service to hold his position open for seven (7) months, particularly given his past elements involving FTRA. Despite the Grievant's 17 years of service and commendable efforts to rehabilitate himself, the Grievant was unable to work during his depression and incarceration.

The Service has a right to expect that the employees it has hired to perform certain jobs will be available on a regular basis, barring some physical or mental condition warranting leniency. The Service has determined that long-term incarceration is not among the reasons it grants employees a leave of absence and, given the Service's need to maintain productivity and provide appropriate levels of customer service, the Arbitrator is reluctant to substitute his judgment in this case.

For the most part, Arbitrators have upheld discharge where the length of the incarceration has made it impossible for the employee to fulfill his obligation to report to work, the reason for the incarceration is a felony rather than misdemeanor conviction, and the effect on the employer is substantial. Although the Grievant's 17-year work record and rehabilitation are mitigating factors, these are offset by his past elements

and extended incarceration.  On balance, the Arbitrator, acknowledging that management gave consideration to its needs and the cost of the Grievant's absence pursuant to ELM Section 514.22, finds that the NOR was for just cause.